My name is Arthur Weed, and I'm the attorney for the appellant. He's been released from custody and he's here today. I think I'll be brief and not take up my whole time because I don't think that's necessary. There are two. Your client can sit down. Oh, OK. Have a seat. Yeah. Yeah. He takes this very serious, as do the rest of us. There were two arguments that I raised in my brief that are both sentencing issues. The first was groups of closely related counts, and the other was the obstruction of justice enhancement. And what I would be inclined to do, if the court wishes it, is to address them in that order. In other words, to start off with the groups of closely related counts, if that's what you would like. OK. As you recall from this case, this was a situation involving citizens from Bangladesh. My client is from Bangladesh. And the other people who were involved with this were also from Bangladesh. They were part of the community of people from Bangladesh that live in Los Angeles. And what happened was one of them testified against another one in a federal case. That, of course, has nothing to do with this case. But what my client did after the conviction of the first case is on three separate occasions, he approached the Bangladeshi, if I'm saying that right, his countrymen, who had testified against someone in a federal case, and he threatened them. This is not good, but this is what he did. And of course, it's a federal crime. He did this on three different occasions involving time periods of seven months. And then he was arrested and he was tried separately for the crime of obstruction of justice. Now, Section 3D1.2 of the sentencing guidelines says that there's an enhancement, an eight-level enhancement. If there is an obstruction of justice where there is either threats or actual harm, and in that sense it differs from the crime itself, because the crime itself requires actual harm. However, it will not be imposed if two or more acts or transactions connected by a common criminal objective or the three acts that I've talked about here constitute part of a common scheme or plan. That's the actual language which the guideline uses. Counsel, how can you have incidents occurring in February, March, and September in different places at different times, different people present, and claim that all those are part of a common scheme or plan? Sure, they're similar acts, but why does that make them closely related that we have to group them? Why would it be error for the court to group something, harassment that occurs in February and harassment that occurs in September? Well, granted, they're separated by a greater length of time than is usual. But I suggest the thing that matters here is that they were all part and parcel of the same objective. In other words, my client wasn't trying to rob this person one time and then beat him up because they had a bet on a football game the second time or something like that. They were all the same thing. If these were three burglaries and the burglar had such success the first time, they decided to do the house again seven months later, would you group those? No, I wouldn't. But why would it be different here? Because we have the same common scheme or plan. I don't think you can say... Well, he did the same thing, but that would also be true in my burglary example. I would suggest not. And the reason is that in this case, they were all motivated by the same intent. And that is to intimidate this witness because he had given testimony against a Bangladeshi. Now, a burglary, if there were three different burglaries, that would be different. You could say, all right, the person wanted to enrich themselves or whatever. I suggest that's not the same thing as what we have here where it was retaliation or what we might call a blood feud. You know, I'm suggesting that's how it might... Are you familiar with the 1996 case of United States v. Bonner out of the 11th Circuit where there's 20 threats against the U.S. Attorney? Yes, Your Honor, I am, and I intend to address that. Excuse me? If I could address that. Please would. Okay. In that case, there were 20 threats. I think they were phone calls to the United States Attorney. And the 11th Circuit, I believe it was, was... Am I right about that? The 11th Circuit, yes. It wasn't this version. Said that because there were separate and distinct instances of fear and psychological harm with each separate threatening communication. Well, your client did not, as I understand it, do the same thing on each of the individual threats. He did different things in different manners. So why aren't those three separate threats? They are. They are. So how is Bonner different then from your case? Because after Bonner, and there's another case, the name of which is escaping me, but Bonner is the difficult one that I have to deal with. The Congress amended the guidelines with Amendment 549, I believe it is. Amendment 549, which was addressed in a 7th Circuit case called U.S. v. Thomas. U.S. v. excuse me, what? Thomas. Thomas. Common spelling, and that's 155 Federal 3rd 833. Now, that wasn't in your brief. No, it wasn't. It wasn't, and I apologize for that. It should have been, but I suppose better late than never. Because this does address that issue that you raised. What does Thomas then hold? The what? What does Thomas hold then? We don't have that, so tell us what Thomas holds. No, you wouldn't have that. At page 840 of 155 Federal 3rd, it says, and I quote, Amendment 549 has clarified that multiple counts of, quote, grouped together under 3D1.2. And what was the date of that amendment? The date of the amendment was 97, which I think, if I recall correctly, is one year after Bonner. And the date of U.S. v. Thomas, the 7th Circuit case, is 1998. And did the amendment address the situation where the threats are made months apart? I'm not able to answer that. I don't know if it did or not. Counsel, you have under two minutes. Did you want to reach your second issue? Yes, sir, I do. Very briefly, on the question of obstruction of justice, which is the second thing, it was argued at Mr. Ahmed's sentencing that the case was already completed. And so, therefore, there wasn't a future impact to the threats and the assaults that were made by Mr. Ahmed. In other words, what he did was he, shall we say, got even with someone for something that had already happened. And what I'm suggesting, and this circuit, I believe, has not addressed this, although in U.S. v. Smith, it specifically said, as the court knows, we're not addressing the situation. In U.S. v. Smith, where no future impact is possible. What I'm suggesting here is that we have a situation where no future impact is possible. Counsel, you're not arguing that he couldn't be convicted of obstruction of justice. You're conceding that point. This is purely a sentencing point. So it has to do with how we classify the crime for which he was convicted. Right. The eight-level increase should not have been. The Seventh Circuit has addressed this question and has said that the question of whether you intend to intimidate somebody against future testimony is irrelevant to the question of how it gets classified for sentencing purposes. Well, I would call the court's attention to United States v. Weston, a First Circuit case that I cite in my reply brief, where there is a very well-reasoned approach to this issue. And in that case, the First Circuit held that if the conduct which forms the basis for the enhancement is in response to conduct capable of repetition. I don't mean, you know, threatening the fellow. What I mean is what the threat is about. In other words, he's saying, OK, you testified against a fellow Bangladeshi. I'm going to get you for that. Now, that conduct of having testified against a member of the community, that conduct has to be capable of repetition. And if it is not, I suggest it's improper to impose enhancement. And I think that's pretty much my time. OK. So unless you have questions, I'll submit it. Thank you, Mr. Weed. Thank you, Your Honor. Ms. Burtis. Good morning. May it please the Court. In both instances in the instant appeal where the defendant is challenging the application of the guidelines, both the application notes as well as the relevant case law that's out there clearly support the application of those guidelines to the defendant's sentence. And are you aware of this U.S. versus Thomas case? I am not, Your Honor. OK. But in terms of the cases that are set forth with respect to the first issue, the grouping issue, this is clearly not a situation where there's one composite harm with a single objective. Rather, it's very clearly the situation that the commentary of that guideline, 3D1.2, specifically addresses. That is that it's a situation where the victim was caused separate and distinct instances of fear and risk of harm. In each of the three situations, the three counts that he was convicted, there were, as the Court has noted, months apart. The first two counts involved both threats to cause bodily harm as well as actual assaults by the defendant on the victim. And the third count, months later, involved only threats of bodily harm. At any rate, each one, as the victim testified at trial and as the evidence in the record sets forth, supports. The victim felt separate fear, suffered separate injuries with respect to the first two counts. And they're clearly separate instances of fear and risk of harm. The case law out there supports the not grouping in those instances, as noted in the government's brief in Bonner and Miller, the 11th and Second Circuit cases and the cases that the defendant relies upon to suggest otherwise. Wilson and Norman are clearly distinguishable in that, in those instances, the defendant was not affecting the victim directly. The separate instances of conduct that he was causing was to a third party, not directly to the victim. Counsel, this may have been subsumed in the question, Judge Brunetti's question to you about the Thomas case. Are you familiar with this Amendment 549 that evidently was also not cited in any of the briefs? I am not. Okay. So, given that, it appears to be the clear meaning of that guideline that these counts should not be grouped. Now, just plain speculation here, given what counsel said, in today's world of the guidelines, what relevance would an amendment to a guideline have in this case at all? In other words, we're speculating here because we haven't seen and read Thomas, but if there is an amendment that specifically says you have to group them, then what happens? Oh, and that the guidelines aren't binding on the court at any rate. At this point, the district court could still have sentenced as it did. So, perhaps. Might the court have thought differently if he thought that there was commentary running the other way? Given that it's now all advisory and that evidently maybe the court and the parties missed part of the advice, might the court want to rethink that question? It's a big issue because it makes a big difference on the sentence, for sure. Right, that it would affect it in terms of a three-level. Well, it seemed that the advice under the guidelines at the time, certainly, and as I said, I'm just simply unfamiliar with the amendment. Well, obviously, your research didn't pull up this case, or you cited it, I assume. That's correct, Your Honor. It did not pull up this case, and it's just unclear to me at this point whether or not there are distinctions or whether it's applicable in this instance at all. With respect to the second issue, the application of the eight defense levels, eight additional levels under 2J1.2B1, that is clearly applicable in the instant case, in that the defendant's offense involved causing as well as threatening to cause physical injury in order to obstruct justice. The defense notion that somehow it doesn't apply because the defendant didn't know, the defendant didn't necessarily know if the witness, if the proceedings were, in fact, over. First of all, these proceedings were not over, and as the district court found, the case, in fact, was still pending on appeal. Whether or not the defendant knew that at the time is really neither here nor there, in that such a relying on that notion allows for a defendant at every turn to just simply argue against the application of this guideline if he doesn't know if the witness has testified or if the witness has completed his testimony during the prosecution. 2J1.2 is the sole guideline for the offense of conviction, the 18 U.S.C. 1513 offense, and so it makes no sense that it would be the sole relevant guideline for 1513 retaliatory conduct and then be rendered completely inapplicable to retaliatory conduct. The application, the case law that is out there in the Seventh Circuit, the Duarte case and the Cunningham case that the government cited in its brief support its application even when the proceeding may be over. And again, as I said here, the proceeding was not technically over and that the appeal was still pending. In addition, the application note suggests that it was properly applied. If you look at the property damage commentary, it's showing that the guideline, that guideline is clearly intended to apply to retaliation even against somebody who has completely completed their testimony. It appears that the function of that guideline is really to distinguish more serious threats, threats to cause or causing physical injury or property damage from lesser threats that could also constitute obstruction. And it makes no sense for it not to apply even if it's past oriented. Obviously, there are policy reasons for it to apply in the sense of protecting witnesses who have participated and assisted the government in the administration of justice. So we believe that it does apply. And as I said, in the instant case, in fact, there was a future impact that could have been had in the sense that the case was in fact on appeal. And unless the court has any particular questions about the application of that guideline, we would submit. Thank you very much. Thank you. Counsel, is there anything that our attention needs to be called to? You've pretty much used your time, but if there's something that demands for correction, then we'll give you an additional 30 seconds. Well, I would like an additional 30 seconds, but I don't think... Okay. All right. I think we understand the case. Thank you very much. United States v. Ahmed is submitted. The next case is Toto v. Hernandez. If we could just sign in. Yes. Counsel, would you, Mr. Weed, would you please provide the clerk with a full citation to the Thomas case? Yes, sir. I will. I'll give her a copy. Okay. Thank you.
judges: Bowman , Brunetti, Bybee